Brent O. Hatch (5715)
Shaunda L. McNeill (14468)
HATCH, JAMES & DODGE, P.C.
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
Facsimile: (801) 363-6666
bhatch@hjdlaw.com
smcneill@hjdlaw.com

Richard L. Stone (pro hac vice to be filed)
Julie A. Shepard (pro hac vice to be filed)
Amy M. Gallegos (pro hac vice to be filed)
JENNER & BLOCK LLP
633 West 5th Street, Suite 3600
Los Angeles, CA  90071
Telephone: (213) 239-5100
Facsimile: (213) 239-5199
rstone@jenner.com
jshepard@jenner.com
agallegos@jenner.com

*Attorneys for Plaintiffs,*
*Community Television of Utah, LLC d/b/a KSTU FOX 13,*
*KUTV Licensee, LLC d/b/a KMYU and KUTV, and*
*Fox Broadcasting Company*

## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| COMMUNITY TELEVISION OF UTAH, LLC d/b/a KSTU FOX 13, KUTV LICENSEE, LLC d/b/a KUTV and KMYU, and FOX BROADCASTING COMPANY,<br><br>    Plaintiffs,<br><br>vs.<br><br>AEREO, Inc.,<br><br>    Defendant. | **COMPLAINT**<br><br>Civil No. 2:13-cv-00910<br><br>Magistrate Judge Paul M. Warner |

## NATURE OF THE CASE

1. On August 19, 2013, Aereo launched a subscription-based Internet streaming service in Utah. Aereo advertises that consumers who subscribe to Aereo can "Watch Live TV Online." To provide this "Live TV Online," Aereo captures local television stations' over-the-air broadcast signals, reprocesses and copies the programming contained in those broadcasts, and then retransmits the programs over the Internet to members of the public who pay Aereo for a subscription. Neither the local stations nor the copyright owners have authorized Aereo to retransmit their programming.

2. Plaintiff Community Television of Utah, LLC does business as KSTU FOX 13 ("KSTU"). KSTU is one of the stations whose signal is being unlawfully retransmitted by Aereo. Founded in 1978 as Utah's first independent television station, KSTU has grown to occupy a prominent place in the Salt Lake City television market. KSTU broadcasts local programming in which it owns the copyrights, such as over 45 hours of news per week including its locally produced, top-rated, early morning news program *Good Day Utah*, local sports, public safety, health, public affairs, and public interest programming. It also broadcasts programs in which Plaintiff Fox Broadcasting Company ("FBC") is the copyright owner or exclusive licensee, such as college sports and popular entertainment programs.

3. Plaintiff KUTV Licensee, LLC does business as KUTV and KMYU, both of which are local broadcast stations whose signals are being unlawfully retransmitted by Aereo. KUTV is a CBS affiliate and Utah's number one television station. A vital presence in the Utah community, KUTV creates, produces, broadcasts, and distributes over 30 hours per week of original programming, including the highly-regarded weekday news program *2 News* and

popular local sports program *Talkin' Sports*, as well as weather, emergency information, sports, entertainment, public affairs, educational, health and wellness programs. KMYU is Utah's My Network TV affiliate. It broadcasts syndicated television shows and films, and the weeknight edition of *Talkin' Sports*.

4. Aereo has not been authorized by any of the Plaintiffs to retransmit their copyrighted programming. Even though Aereo is in the business of selling access to the programming broadcast on KSTU, KUTV, KMYU, and other local stations, it pays nothing to the copyright owners. Legitimate retransmission services like cable and satellite companies, in contrast, obtain licenses to retransmit broadcast signals to their subscribers.

5. Aereo claims that it is entitled to sell subscription access to copyrighted programming without compensating the copyright owners because it has invented a business model that falls within a purported loophole to the Copyright Act. Specifically, Aereo claims that because it captures the broadcasts using miniature antenna loops that it randomly assigns to subscribers when they log onto the website, and then copies each incoming stream to an Aereo server before transmitting it over the Internet, its transmissions are "private" and therefore not subject to the Copyright Act.

6. Copyright law, however, does not permit Aereo to appropriate to itself the value of Plaintiffs' television programming by retransmitting it over the Internet without proper licenses. It simply does not matter whether Aereo uses one big antenna or hundreds of tiny ones to receive local broadcasts. Nor does it matter that Aereo routes the broadcast signal through a server that copies it before retransmitting it. No amount of technological gimmickry by Aereo changes the fundamental principle of copyright law that those who wish to retransmit

copyrighted broadcasts may do so only with the copyright owners' authority. Aereo is an unauthorized Internet video delivery service that is receiving, converting, copying, and retransmitting broadcast signals to its subscribers for a fee without authorization from the copyright owners, in violation of the Copyright Act.

7. Aereo's misconduct constitutes infringement of Plaintiffs' exclusive rights of public performance, reproduction, and distribution granted under the United States Copyright Act.

8. The rights to stream Plaintiffs' programming over the Internet for viewing on computers and portable devices are extremely valuable. Plaintiffs ask that the Court enjoin Defendants' unauthorized Internet streaming service and award damages arising out of Defendants' unlawful conduct.

## JURISDICTION AND VENUE

9. This is a civil action seeking injunctive relief and damages for copyright infringement under the Copyright Act, 17 U.S.C. § 101 *et seq.*

10. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

11. This Court has personal jurisdiction over Aereo because it engages in copyright infringement in Utah by, among other things, retransmitting, without authorization, Plaintiffs' broadcast network signals and copyrighted programming to Aereo subscribers located in this District. On information and belief, all equipment, servers, and technology Aereo uses to capture Plaintiffs' signals and transmit them to Aereo subscribers in Utah are located within this District.

Moreover, because Aereo is a commercial service, Aereo is profiting from Salt Lake City subscribers.

12.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(a) because, among other things, a substantial part of the acts of infringement complained of herein occurs in this District.

## PLAINTIFFS AND PLAINTIFFS' BUSINESS

13.     Plaintiff KSTU is a local broadcast television station that serves Salt Lake City and the surrounding areas. Its principal place of business is at 5020 Amelia Earhart Dr., Salt Lake City, Utah.

14.     Plaintiff KUTV Licensee, LLC is a Nevada limited liability company that does business as KUTV and KMYU. KUTV and KMYU are local broadcast television stations that serve Salt Lake City and the surrounding areas. KUTV's principal place of business is at 299 S. Main Street, Suite 150, Salt Lake City, Utah. KMYU's principal place of business is at 31 E. St. George Blvd., St. George, Utah.

15.     Plaintiff Fox Broadcasting Company ("FBC") is a Delaware corporation with its principal place of business at 10201 West Pico Blvd., Los Angeles, California. FBC operates the Fox Network, a national broadcast television network with 203 affiliates reaching approximately 99% of all United States households.

16.     Plaintiffs are the legal or beneficial owners or exclusive licensees of the copyrights in numerous programs that have been, or will be, exhibited over KSTU, KUTV, and/or KMYU. A non-exhaustive list identifying representative samples of such television programs is set forth in Exhibit A ("TV Programs"). Each of the TV Programs is an original

audiovisual work that has been or will be fixed in a tangible medium of expression and constitutes copyrightable subject matter within the meaning of Section 102 of the Copyright Act, 17 U.S.C. § 102. Each TV Program has been or will be registered with the United States Copyright Office, or is or will be the subject of an application for registration filed with the Copyright Office.

## AEREO AND ITS BUSINESS

17. Aereo operates a subscription-based Internet streaming service located at www.aereo.com that (a) captures live broadcast television programming, including programming of stations broadcasting Plaintiffs' works, (b) processes the programming of those captured signals in its data centers for Internet streaming, (c) copies the programming, and (d) streams that programming over the Internet to Aereo subscribers, who can view the programming on Internet-enabled devices.

## NATURE OF AEREO'S UNLAWFUL CONDUCT

18. On information and belief, Aereo launched its service in Utah on August 19, 2013. On that date, Aereo began retransmitting the live broadcasts of local stations such as KSTU, KUTV, and KMYU to subscribers within the state of Utah.

19. Aereo designed, developed, and operates specialized systems as part of its unauthorized streaming service, and has full knowledge of, and control over, how those systems work.

20. On information and belief, Aereo has established one or more facilities in the state of Utah at which Aereo receives programming broadcast on local television stations, including KSTU, KUTV and KMYU.

On information and belief, each of Aereo's Utah facilities contains a system for retransmitting live television broadcasts, which consists of hundreds or thousands of miniature antenna loops arranged on circuit boards, and computer equipment. When an Aereo subscriber logs onto the Aereo website and selects "Watch" to watch a broadcast television program currently airing live on Aereo, Aereo's system assigns one of the antenna loops to receive the signal of the station airing that program. An Aereo server transcodes the data received by the antenna, buffers it, and sends it to another Aereo server, where three copies of the program are saved to a hard drive in a directory reserved for that subscriber. Once six or seven seconds of the program have been saved in Aereo's hard drive, Aereo streams the program to the subscriber from one of the copies. The copy used to transmit the program to the subscriber, as well as the other two copies, are automatically deleted when the subscriber stops watching. This entire process occurs "under the hood" and is invisible to the subscriber. The subscriber simply clicks on a program currently airing from an on-screen program guide, and seconds later she receives the live program via Aereo on her computer, mobile device or television with the use of a Internet-connected device (*i.e.*, AppleTV or Roku).

21.     Using this system, Aereo makes Internet streams of broadcast programming, including Plaintiffs' programming, available to Aereo subscribers 24 hours a day, seven days a week.

22.     On information and belief, Aereo also allows its subscribers to select and record broadcast programs for later viewing.

23.      When Aereo transmits the images and accompanying sounds of Plaintiffs' copyrighted audiovisual works to Aereo subscribers without Plaintiffs' authorization, it performs

Plaintiffs' copyrighted works publicly in violation of Plaintiffs' exclusive rights under Section 106(4) of the Copyright Act, 17 U.S.C. § 106(4).

24. The public performance right provides the economic foundation upon which the television production and distribution industries rest. Program suppliers such as Plaintiffs license their works for public performance through various distributors, including broadcast networks and broadcast stations. Program suppliers and broadcasters license works for public performance on cable and satellite television, as well as over the Internet and through other media.

25. The Copyright Act's right of public performance applies broadly to television distribution. Congress described the public performance right as extending to "not only the initial rendition or showing, but also any further act by which that rendition or showing is transmitted or communicated to the public." H.R. Rep. No. 94-1476, at 63 (1976). As examples Congress indicated that "a broadcasting network is performing when it transmits [a] performance; a local broadcaster is performing when it transmits the network broadcast; [and] a cable television system is performing when it retransmits the broadcast to its subscribers . . . ." *Id*. Congress emphasized that a performance may be accomplished by "all kinds of equipment for reproducing or amplifying sounds or visual images, and . . . systems not yet in use or even invented." *Id*.

26. Congress described the concept of "public" performance in similarly broad terms. The Copyright Act states that "to perform . . . a work 'publicly' means, among other things, "to transmit or otherwise communicate a performance or display of the work . . . to the public, by means of any device or process, whether the members of the public capable of receiving the

performance receive it in the same place or in separate places and at the same time or at different times." 17 U.S.C. § 101.  Congress explained that such transmissions "include[s] all conceivable forms and combinations of wired or wireless communications media, including but by no means limited to radio and television broadcasting as we know them."  H.R. Rep. No. 94-1476, at 63 (1976).  It added that "[e]ach and every method by which the images or sounds comprising a performance . . . are picked up and conveyed is a 'transmission,' and if the transmission reaches the public in any form, the case comes within the scope of" the public performance right.  *Id.*

27. Plaintiffs have never authorized Aereo to make public performances of their copyrighted works.  Accordingly, whenever Aereo captures and retransmits a broadcast of Plaintiffs' copyrighted works, it infringes Plaintiffs' exclusive right of public performance.

28. Under Section 106(1) of the Copyright Act, Plaintiffs own the exclusive right to reproduce their copyrighted works.  17 U.S.C. § 106(1).  Plaintiffs have never authorized Aereo or its subscribers to make reproductions of their copyrighted works in the manner alleged herein.

29. As part of Aereo's process of encoding broadcasts for Internet retransmission, making such retransmissions, and storing programming for subsequent transmission, Aereo also reproduces Plaintiffs' copyrighted works in violation of Plaintiffs' exclusive rights under Section 106(1) of the Copyright Act.

30. To the extent Aereo claims that its subscribers are responsible for making unauthorized copies of Plaintiffs' works, Plaintiffs allege in the alternative that whenever Aereo's subscribers reproduce any of Plaintiffs' copyrighted works in connection with Aereo's retransmission of live broadcasts of those works over the Internet, Aereo secondarily infringes Plaintiffs' exclusive reproduction rights.

31. Under Section 106(3) of the Copyright Act, Plaintiffs own the exclusive right to "distribute copies . . . of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending." 17 U.S.C. § 106(3).

32. As part of Aereo's process of encoding broadcasts for Internet retransmission, making such retransmissions, and storing programming for subsequent transmission, Aereo distributes copies of Plaintiffs' copyrighted works in violation of Plaintiffs' exclusive rights under Section 106(1) of the Copyright Act.

33. By commercially exploiting Plaintiffs' programming without authorization, Aereo seeks to compete directly with Plaintiffs and their lawful licensees and authorized retransmitters, and further take advantage of and undermine Plaintiffs' substantial creative and financial investment in the creation and broadcast of their programming and other content. Aereo free-rides on Plaintiffs' substantial investment in their broadcasting infrastructures, and is willfully, wantonly and unfairly exploiting Plaintiffs' programming and broadcasts for their own commercial benefit.

34. Aereo's infringing and unlawful conduct is causing and will cause Plaintiffs substantial and irreparable injury by, among other things, undermining their business relationships with, and Plaintiffs' ability to license their content to, both traditional transmitters of television programming and new services that deliver television programming and motion pictures to portable devices via the Internet. These services include Internet-only services such as iTunes and Hulu, and authorized offerings by cable, satellite, broadband, and mobile telecommunications providers. Aereo's conduct thus interferes with Plaintiffs' current

relationships with these companies and with Plaintiffs' ability to license to these and other companies going forward.

35. Aereo's misconduct also interferes with Plaintiffs' own websites, from which Plaintiffs stream their content.

36. Aereo's misconduct prevents Plaintiffs from enforcing their standards for high quality and security that are an integral part of Plaintiffs' decision-making concerning any licensing or distribution of their works.

37. Aereo's misconduct will cause Plaintiffs to lose the ability to track viewership of their programming and commercial advertising by Aereo subscribers, which will adversely affect Plaintiffs' ability to sell advertising, obtain sponsorships, and otherwise derive value from their programming.

38. In short, Aereo's unlawful conduct injures Plaintiffs' ability to use their programming for their own commercial benefit.

## COUNT ONE

**(Copyright Infringement – Infringement of the Public Performance Right In Violation of 17 U.S.C. §§ 106(4), 501)**

39. Plaintiffs incorporate by reference paragraphs 1 through 38 as if set forth herein.

40. Aereo, without the permission or consent of Plaintiffs, has publicly performed and will publicly perform Plaintiffs' copyrighted audiovisual works, including but not limited to the works listed in Exhibit A hereto, by transmitting live broadcast television programming over the Internet to Aereo subscribers.

41. Aereo is directly liable for these acts of infringement under the Copyright Act. Aereo causes and carries out the unauthorized public performance of Plaintiffs' audiovisual

works. Aereo publicly performs the works by transmitting them from the point of reception to Aereo subscribers over the Internet.

42. Such public performance of audiovisual works constitutes infringement of Plaintiffs' exclusive rights under copyright law in violation of 17 U.S.C. § 106(4).

43. The infringement of Plaintiffs' rights in each of their copyrighted audiovisual works constitutes a separate and distinct act of infringement.

44. Aereo's acts of infringement are willful, intentional and purposeful, in disregard of and with indifference to the rights of Plaintiffs.

45. Aereo's misconduct is causing and, unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot fully be compensated or measured in money. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a preliminary and permanent injunction prohibiting infringement of Plaintiffs' copyrights and exclusive rights under copyright.

## COUNT TWO

### (Copyright Infringement – Infringement of the Reproduction Right In Violation of 17 U.S.C. §§ 106(1), 501)

46. Plaintiffs incorporate by reference paragraphs 1 through 45 as if set forth herein.

47. Aereo, without the permission or consent of Plaintiffs, has reproduced and will reproduce Plaintiffs' copyrighted audiovisual works, including but not limited to the works listed in Exhibit A hereto. Aereo has copied and will copy Plaintiffs' copyrighted audiovisual works in the operation of its unauthorized Internet retransmission system, including by copying such works and storing them on Aereo's servers before retransmitting them over the Internet to subscribers.

48. Aereo is directly liable for these acts of infringement under the Copyright Act. Aereo causes and carries out the unauthorized copying of Plaintiffs' audiovisual works by reproducing those works onto Aereo computer servers and/or other equipment as part of the process of transmitting live broadcast performances and offering a virtual recording service for playback for subsequent retransmission over the Internet.

49. Such reproduction of audiovisual works constitutes infringement of Plaintiffs' exclusive rights under copyright in violation of 17 U.S.C. §§ 106(1) and 501.

50. Alternatively, Aereo is secondarily liable for each such act of infringement under Sections 106(1) and 501 of the Copyright Act, 17 U.S.C. §§ 106(1), 501, including but not limited to infringement of the works listed in Exhibit A hereto.

51. Aereo purposefully and intentionally induces and encourages such infringement by providing the Aereo service with the object of promoting its use to reproduce copies of broadcast television programming, virtually all of which is copyrighted. Aereo operates its service with the object that its subscribers will infringe the copyrights in such programming by making reproductions of broadcast programming in the ordinary operation of the Aereo service.

52. Aereo is additionally liable for contributory infringement as to such reproductions because (a) Aereo has knowledge of the programming reproduced, that such programming is copyrighted, and that such programming is reproduced in the systems Aereo has created, and (b) Aereo causes or materially contributes to such infringement by providing the www.aereo.com site and related facilities for the infringing reproductions in connection with the operation of the Aereo service.

53. The infringement of Plaintiffs' rights in each of their copyrighted audiovisual works constitutes a separate and distinct act of infringement.

54. Aereo's acts of infringement are willful, intentional and purposeful, in disregard of and with indifference to the rights of Plaintiffs.

55. Aereo's misconduct is causing and, unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot fully be compensated or measured in money. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a preliminary and permanent injunction prohibiting infringement of Plaintiffs' copyrights and exclusive rights under copyright.

### COUNT THREE

**(Copyright Infringement – Infringement of the Distribution Right In Violation of 17 U.S.C. §§ 106(3), 501)**

56. Plaintiffs incorporate by reference paragraphs 1 through 55 as if set forth herein.

57. Aereo, without the permission or consent of Plaintiffs, has distributed and will distribute copies of Plaintiffs' copyrighted audiovisual works to the public, by sale or other transfer of ownership, including but not limited to the works listed in Exhibit A hereto.

58. Aereo is directly liable for these acts of infringement under the Copyright Act. Aereo causes and carries out the unauthorized distribution of copies of Plaintiffs' audiovisual works. Specifically, to the extent Aereo claims that the copies of Plaintiffs' copyrighted programs saved to the directories of Aereo subscribers are owned by or in the possession of those subscribers, then Aereo distributes these copies by capturing and transcoding the broadcast signal, and then placing copies of the programs contained in the signal in its subscribers' directories.

59. Such distribution of copies of audiovisual works constitutes infringement of Plaintiffs' exclusive rights under copyright law in violation of 17 U.S.C. § 106(4).

60. The infringement of Plaintiffs' rights in each of their copyrighted audiovisual works constitutes a separate and distinct act of infringement.

61. Aereo's acts of infringement are willful, intentional and purposeful, in disregard of and with indifference to the rights of Plaintiffs.

62. Aereo's misconduct is causing and, unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot fully be compensated or measured in money. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a preliminary and permanent injunction prohibiting infringement of Plaintiffs' copyrights and exclusive rights under copyright.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Aereo as follows:

1. For a preliminary and permanent injunction requiring that Aereo and its successors and assigns, parents, subsidiaries, affiliates, suppliers, officers, agents, servants, employees, and attorneys, and all those persons in active concert, participation or privity with them cease any and all infringement of Plaintiffs' rights under Section 106 of the Copyright Act in their copyrighted programming, including by retransmission of broadcasts of such programming over Aereo or any other service.

2. For Plaintiffs' costs, including reasonable attorneys' fees, including those allowable pursuant to 17 U.S.C. § 505.

3. For impounding and disposition of infringing articles under 17 U.S.C. § 503.

4. For such monetary relief, including statutory damages including an enhancement for willful infringement, disgorgement of Aereo's profits attributable to the infringement, and/or actual damages, under 17 U.S.C. § 504, and pre- and post-judgment interest thereon, as the Court and/or a jury determine are appropriate.

5. For pre- and post-judgment interest on any monetary award made part of the judgment against Aereo.

6. For such other and further relief as the Court may deem just and proper.

Dated: October 7, 2013                                      Respectfully submitted,

*/s/ Brent O. Hatch*
HATCH, JAMES & DODGE, PC
Brent O. Hatch
Shaunda L. McNeill

JENNER & BLOCK LLP
Richard L. Stone
Julie A. Shepard
Amy M. Gallegos

*Attorneys for Plaintiffs*
*Community Television of Utah, LLC, d/b/a*
*KSTU FOX 13, KUTV Licensee, LLC, d/b/a*
*KUTV and KMYU, and Fox Broadcasting*
*Company*