Brent O. Hatch (5715)
Shaunda L. McNeill (14468)
HATCH, JAMES & DODGE, P.C.
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
Facsimile: (801) 363-6666
bhatch@hjdlaw.com
smcneill@hjdlaw.com

Richard L. Stone (pro hac vice pending)
Julie A. Shepard (pro hac vice pending)
Amy M. Gallegos (pro hac vice pending)
JENNER & BLOCK LLP
633 West 5th Street, Suite 3600
Los Angeles, CA  90071
Telephone: (213) 239-5100
Facsimile: (213) 239-5199
rstone@jenner.com
jshepard@jenner.com
agallegos@jenner.com

*Attorneys for Plaintiffs,*
*Community Television of Utah, LLC d/b/a KSTU FOX 13,*
*KUTV Licensee, LLC d/b/a KMYU and KUTV, and Fox Broadcasting Company*

**IN THE UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| COMMUNITY TELEVISION OF UTAH, LLC d/b/a KSTU FOX 13, KUTV LICENSEE, LLC d/b/a KUTV and KMYU, and FOX BROADCASTING COMPANY,<br><br>        Plaintiffs,<br><br>vs.<br><br>AEREO, Inc.,<br><br>        Defendant. | **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER**<br><br>Civil No. 2:13-cv-00910 DN<br><br>Judge David Nuffer |

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

STATEMENT OF FACTS .............................................................................................. 5

   A.    The Plaintiffs And Their Programming ........................................................ 5

   B.    Aereo And Its Billion-Dollar Backers........................................................... 6

   C.    Aereo's Attempt To Immunize Its Infringement With Aberrant Second Circuit Law .... 7

   D.    The Status Of The New York Action Against Aereo................................... 10

   E.    Aereo's Declaratory-Judgment Action Against CBS And Its Owned-And-Operated Stations, None Of Whom Are Parties In This Case ....................................... 10

   F.    Litigation Against Aereo And Its Clones Is Proceeding Around The Country ............. 11

ARGUMENT ................................................................................................................. 12

   A.    The Relevant Factors Weigh Heavily In Favor Of Keeping This Case In Utah........... 13

       1.    The Plaintiffs' Choice Of Forum Is Entitled To Substantial Deference .................... 13

       2.    Aereo, Not The Plaintiffs, Is Guilty Of Forum Shopping........................................... 14

       3.    The Convenience Of The Witnesses Tips Decidedly In Favor Of This District ........ 15

       4.    The "Technology" Aereo Claims Immunizes It From Liability Is In Utah ............... 18

       5.    A Judgment Issued By This Court Would Be Equally As Enforceable As One Issued By The Southern District Of New York ................................................................... 18

       6.    There Are No Obstacles To A Fair Trial In This District........................................... 19

i

7.   The Relative Congestion Of Dockets Does Not Outweigh The Other Factors .......... 19

8.   Plaintiffs Are Entitled To Have A Local Court Determine Aereo's Liability For Local

    Infringement ........................................................................................................ 19

9.   Aereo Has Not Identified Any Other Practical Considerations That Weigh In Favor

    Of Transferring This Case ........................................................................................ 20

CONCLUSION ........................................................................................................ 22

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*3form, Inc. v. Sunset Plaza, LLC*,
    No. 10-856, 2011 WL 4565797 (D. Utah Sept. 29, 2011)................................................12, 13

*Am. Broad. Cos., Inc. v. Aereo, Inc.*,
    874 F. Supp. 2d 373 (S.D.N.Y. 2012)......................................................................................9

*Andrews v. Norfolk S. Corp.*,
    No. 07-2688, 2008 WL 687255 (D.N.J. Mar. 4, 2008) ...........................................................19

*AT&T Corp. v. PAB, Inc.*,
    935 F. Supp. 584 (E.D. Pa. 1996) ..........................................................................................20

*Aurora Bank, FSB v. Paramount Residential Mortg. Grp., Inc.*,
    No. 12-3235, 2013 WL 4079428 (D. Colo. Aug. 13, 2013)....................................................18

*Blue Ribbon Commodity Traders, Inc. v. Quality Foods Distribs.*,
    No. 07-4037, 2008 WL 269487 (E.D. Pa. Jan. 31, 2008).......................................................22

*Central States, Se. & Sw. Areas Pension Fund v. Davidson*,
    No. 06-6979, 2007 WL 722889 (N.D. Ill. Mar. 8, 2007) ......................................................20

*Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*,
    618 F.3d 1153 (10th Cir. 2010) ................................................................................... passim

*Eres N.V. v. Citgo Asphalt Refining Co.*,
    605 F. Supp. 2d 473 (S.D.N.Y. 2009).....................................................................................16

*Forte Supply, LLC v. Mojo Frozen Yogurt, LLC*,
    No. 13-797, 2013 WL 5477165 (D. Colo. Sept. 30, 2013)................................................13, 18

*Fox Television Stations, Inc. v. BarryDriller Content Sys., PLC*,
    915 F. Supp. 2d 1138 (C.D. Cal. 2012) ......................................................................... passim

*Fox Television Stations, Inc. v. FilmOn X LLC*,
    --- F. Supp. 2d ---, 2013 WL 4763414 (D.D.C. 2013)................................................... passim

*Gagnon v. Sprint Spectrum, L.P.*,
    No. 02-2232, 2002 WL 31477975 (D. Kan. Oct. 31, 2002)....................................................20

*Headrick v. Atchison, T. & S.F. Ry. Co.*,
   182 F.2d 305 (10th Cir. 1950) .......................................................................................12

*Hearst Stations, Inc. v. Aereo, Inc.*,
   --- F. Supp. 2d ---, 2013 WL 5604284 (D. Mass. 2013).................................................4, 12, 20

*High River Ltd. P'ship v. Mylan Labs., Inc.*,
   353 F. Supp. 2d 487 (M.D. Pa. 2005) .............................................................................19

*LeMond Cycling, Inc. v. Trek Bicycle Corp.*,
   No. 08-1010, 2008 WL 2247084 (D. Minn. May 29, 2008).................................................22

*MDM Grp. Assocs., Inc. v. Resortquest Int'l, Inc.*,
   No. 06-1518, 2009 WL 2924821 (D. Colo. Sept. 9, 2009).................................................4

*Nat'l Commc'ns Grp., Inc. v. Great Lakes Commc'ns Corp.*,
   No. 07-4037, 2008 WL 2036905 (N.D. Iowa May 9, 2008) ...............................................20

*Payless Shoesource, Inc. v. St. Paul Fire & Marine Ins. Co.*,
   No. 06-4124, 2006 WL 3747558 (D. Kan. Dec. 18, 2006) ................................................21

*RES-NV, LLC v. Rosenberg*,
   No. 13-115, 2013 WL 3548697 (D. Utah July 11, 2013) ...................................................12

*Romanowski v. RNI, LLC*,
   No. 06-6575, 2007 WL 323019 (N.D. Cal. Jan. 31, 2007).................................................22

*Schecher v. Purdue Pharma L.P.*,
   317 F. Supp. 2d 1253 (D. Kan. 2004) .............................................................................14

*Scheidt v. Klein*,
   956 F.2d 963 (10th Cir. 1992) ..............................................................................12, 15, 17

*Schnabel v. Ramsey Quantitative Sys., Inc.*,
   322 F. Supp. 2d 505 (S.D.N.Y. 2004).............................................................................14

*Shanehchian v. Macy's, Inc.*,
   251 F.R.D. 287 (S.D. Ohio 2008) .................................................................................22

*Stewart v. Stoller*,
   No. 07-552, 2008 WL 4168519 (D. Utah Aug. 28, 2008)..................................................16

*Stone v. Williams*,
   970 F.2d 1043 (2d Cir. 1992).........................................................................................4

*Studdard By & Through Studdard v. Connaught Labs., Inc.*,
  793 F. Supp. 291 (D. Kan. 1992) ............................................................19

*Truth Hardware Corp. v. Ashland Prods., Inc.*,
  No. 02-1541, 2003 WL 118005 (D. Del. Jan. 13, 2003) ..........................21

*Waldmer v. SET Solutions, Inc.*,
  No. 05-2098, 2006 WL 314346 (D. Kan. Feb. 3, 2006) ...........................14

*WNET, Thirteen v. Aereo, Inc.*,
  722 F.3d 500 (2d Cir. 2013) .................................................................2, 4

*WNET, Thirteen v. Aereo, Inc.*,
  712 F.3d 676 (2d Cir. 2013) ...........................................................8, 9, 14

STATUTES

17 U.S.C. § 101 ................................................................................7, 18

OTHER AUTHORITIES

2 Paul Goldstein, *Goldstein on Copyright* (3d ed. Supp. 2012) .......................................1

Jane C. Ginsburg, *Recent Developments in US Copyright Law – Part II, Caselaw: Exclusive
  Rights on the Ebb?*, Columbia Pub. L. Res. Paper No. 08-192 (2008).....................................1

Jeffrey Malkan, *The Public Performance Problem in Cartoon Network LP v. CSC Holdings, Inc.*,
  89 Or. L. Rev. 505 (2010)..............................................................................1

# INTRODUCTION

This case belongs in Utah, not New York. Aereo made a deliberate decision to launch its infringing service in Utah, to steal the signals of television stations based in Salt Lake City and St. George, and to offer that content over the Internet to subscribers located in Utah for a monthly fee. The infringement at issue in this case is taking place exclusively in this district, not in New York; it is harming local broadcasters in this district, not in New York; and the key witnesses and evidence are in this district, not in New York. None of the plaintiffs in this case are parties to the New York action, and none of the copyrights at issue in this case are at issue in New York. Yet Aereo has moved this Court to force local Utah plaintiffs to litigate their claims on the other side of the country. It is no secret that the primary reason Aereo wants to escape this District for New York is to ensure that the court deciding this case will be bound by aberrant Second Circuit precedent favorable to Aereo — precedent that numerous scholars and courts agree is incorrect because it is based on an a clear misreading of the Copyright Act.[1] Indeed, in

---

[1] *See, e.g.*, *Fox Television Stations, Inc. v. FilmOn X LLC*, --- F. Supp. 2d ---, 2013 WL 4763414, at *13-14 & nn.11-12 (D.D.C. 2013) (agreeing that the Second Circuit misread the statute and enjoining Aereo-like service); *Fox Television Stations, Inc. v. BarryDriller Content Sys., PLC*, 915 F. Supp. 2d 1138, 1143-46 (C.D. Cal. 2012) (same); 2 Paul Goldstein, *Goldstein on Copyright* § 7.7.2, at 7:168 (3d ed. Supp. 2012) ("The error in the Second Circuit's construction of the transmit clause was to treat 'transmissions' and 'performance' as synonymous, where the Act clearly treats them as distinct – and different – operative terms."); Jane C. Ginsburg, *Recent Developments in US Copyright Law – Part II, Caselaw: Exclusive Rights on the Ebb?*, 26, Columbia Pub. L. Res. Paper No. 08-192 (2008) (the Second Circuit "confused 'performance' and 'transmission'); Jane C. Ginsburg, WNET v. Aereo: *The Second Circuit Persists in Poor (Cable)Vision* (The Media Inst., Apr. 23, 2013) (explaining that "at different places and different times" is "the key language" in the Transmit Clause and that "the Second Circuit's reading

the past year alone two courts outside the Second Circuit have enjoined a service identical to Aereo, rejecting the Second Circuit case law Aereo exclusively relies on.[2]

Aereo has not met its burden of establishing that the appropriate factors weigh in favor of transferring this case to New York.[3]  To the contrary, they weigh heavily in favor of allowing the plaintiffs to proceed in Utah, their chosen forum.  Plaintiffs KSTU, KUTV, and KMYU all maintain their offices in Utah and employ hundreds of Utahns.  They have no connection to New York.  The witnesses who will testify to the irreparable harm caused by Aereo's infringement also reside in Utah.  And the retransmission device that — under Aereo's own theory of the case — is a critical piece of evidence that would need to be inspected by the parties and their experts, is physically located in Utah.

Aereo's arguments in favor of transfer have no merit.  Although Aereo claims it is a small start-up company that cannot afford to litigate in Utah, it is in fact backed and funded by billionaire media mogul Barry Diller through his conglomerate IAC/Interactive Corp. ("IAC").[4] Mr. Diller and his companies control dozens of Internet businesses worldwide and have over a

---

effectively deletes 'different times' from the statute); Jeffrey Malkan, *The Public Performance Problem in Cartoon Network LP v. CSC Holdings, Inc.*, 89 Or. L. Rev. 505, 536 (2010) (the *Cablevision* court "thought that the words 'performance' and 'transmission' were interchangeable . . . [but] a transmission and a performance remain, technically and legally, two distinct things"); *see also WNET, Thirteen v. Aereo, Inc*., 722 F.3d 500, 507 n.13 (2d Cir. 2013) (Chin, J., dissenting from denial of rehearing en banc) (citing additional commentary criticizing *Cablevision*).

[2] *FilmOn X*, 2013 WL 4763414, at *12-15; *BarryDriller*, 915 F. Supp. 2d at 1143-46.

[3] *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc*., 618 F.3d 1153, 1167 (10th Cir. 2010).

[4] Declaration of Julie Shepard in Support of Plaintiffs' Opposition to Defendant's Motion to Transfer ("Shepard Decl."), Exs. 1-2.

billion dollars at their disposal.[5]   Moreover, Aereo is currently in the middle of a massive expansion with the goal of being in 22 cities by the end of this year.[6]   Aereo knew from the outset that its business model would lead to litigation and prepared for it.  Just last week, Aereo's CEO Chet Kanojia told the New York Business Journal that he was not concerned about legal fees incurred battling broadcasters, stating that Aereo "has sufficient money to pay our [legal] bills.  Our investors are prepared to create a new ecosystem."[7]

Aereo also insinuates that some of its executives who may testify in this case reside in New York, but that is not the case.   Of the four executives Aereo identifies, two live in Massachusetts, one lives in Ohio, and one lives in California.   And although Aereo claims that this case should be transferred to New York because that is where a lawsuit against it by New York broadcasters has been pending for a year and a half, this case cannot be consolidated with the New York action without severely prejudicing the plaintiffs or substantially delaying the New York litigation.  Fact discovery is closed in the New York case, cross-summary judgment motions have been fully briefed, and the trial is expected to take place in the first half of next year.[8]  The facts relevant to this case (e.g., Plaintiffs' copyrighted content, Plaintiffs' harms, and Aereo's Utah retransmission system) are not and have never been in issue in New York, meaning the court there would have to reopen discovery and start from scratch.  In fact, Aereo recently

---

[5] *Id.* Exs. 2-3.
[6] Dkt. No. 8, Ex. J.
[7] Shepard Decl. Ex. 4.
[8] Shepard Decl. ¶ 3.

asked a court in Boston to transfer the lawsuit brought by a Boston broadcaster against Aereo to New York, and its motion was denied for exactly that reason.[9]

If Aereo is forced to litigate in multiple jurisdictions it has only itself to blame. Aereo commits **new** acts of infringement against **new** copyright owners whenever it launches in a new market because "each act of infringement is a distinct harm giving rise to an independent claim for relief."[10] Plaintiffs seeking protection from Aereo's infringement have the right to choose their forum. Aereo does **not** have the right to engage in infringement across the country and then force all the plaintiffs it has harmed into Aereo's chosen forum. Although it always intended to operate nationwide, Aereo limited its initial launch to New York to guarantee that the first infringement case filed against it would be in the Second Circuit, so that it could take advantage of that court's misreading of the Copyright Act.[11] Aereo's gambit paid off: It has so far managed to avoid the otherwise universal fate of companies that broadcast television programming over the Internet without a license — a ruling that they are committing copyright infringement and an order enjoining them from continuing. Having avoided a preliminary injunction in New York, Aereo is now expanding across the country, attempting to hide behind aberrant Second Circuit law to shield its geographically expanding infringement through the vehicle of motions to transfer. This is not about concerns for efficiency — this is Aereo gaming the system. Aereo's motion should be denied.

---

[9] *Hearst Stations, Inc. v. Aereo, Inc.*, --- F. Supp. 2d ---, 2013 WL 5604284, at *3 (D. Mass. 2013) (holding that Hearst, which controls television stations across the country, was a "hometown plaintiff for the purposes of th[at] litigation," and was entitled to its chosen forum).

[10] *See, e.g.*, *MDM Grp. Assocs., Inc. v. Resortquest Int'l, Inc.*, No. 06-1518, 2009 WL 2924821, at *3 (D. Colo. Sept. 9, 2009) (citing *Stone v. Williams*, 970 F.2d 1043, 1049 (2d Cir. 1992)).

[11] *See WNET*, 722 F.3d at 502-03 (Chin, J., dissenting from denial of rehearing en banc).

## STATEMENT OF FACTS

The following facts support Plaintiffs' opposition to Aereo's transfer motion:

**A.      The Plaintiffs And Their Programming.**

1.      KSTU, KUTV, and KMYU are all based within this state, maintain their offices here, and employ hundreds of Utahns.[12]  They broadcast throughout Utah.[13]

2.      KSTU, KUTV, and KMYU dedicate substantial time and effort to crafting and providing programming specific to this state and its residents, including popular Salt Lake City news programs such as KSTU's *Good Day Utah* and KUTV's *2News*, as well as the top-rated Utah-centric sports program, *Talkin' Sports*, which is broadcast on KUTV and KMYU.[14]

3.      KSTU, KUTV, and KMYU are active in the community, sponsoring and participating in events supporting numerous charitable organizations, and promoting educational initiatives throughout the state.[15]

4.      Fox Broadcasting Company ("FBC") is located in California, and its programming is carried locally on KSTU.[16]

5.      KSTU, KUTV, and KMYU have no employees or offices in New York.[17]  FBC's main offices are in California and all of the employees and documents relevant to this case are located in California; none are in New York.

---

[12] *See* Dkt. No. 9 ¶¶ 4-5, 7; Dkt. No. 10 ¶¶ 3-4.
[13] Dkt. No. 9 ¶ 4; Dkt. No. 10 ¶ 3.
[14] *See id.*
[15] *See* Dkt. No. 9 ¶ 5.
[16] Dkt. No. 12 ¶¶ 2-3.

**B.      Aereo And Its Billion-Dollar Backers.**

6.      Aereo  describes itself as a "small start-up company," and claims that it faces "overwhelming litigation costs" if it is made to defend its infringement in this district.[18]

7.      In actuality, Aereo is backed by Barry Diller, through his media conglomerate IAC.[19]

8.      IAC's family of websites is one of the largest in the world:  It owns Ask.com, About.com, Match.com, Ok Cupid, Dictionary.com, The Daily Beast, Urbanspoon, and Vimeo, among others.[20]  It has global reach:  Its website touts that its network of sites has over one billion monthly visits across more than 30 countries.[21]

9.      So far, Aereo has received over $68 million in financing from IAC and other institutional investors.[22]

10.      Mr. Diller, the public face of Aereo, is reportedly worth around two billion dollars, and also controls Expedia, Inc., which operates well-known websites such as expedia.com, hotels.com, and hotwire.com, and as well as more than 150 other travel booking sites in more than 70 countries.[23]

---

[17] *See* Declaration of Tim Ermish in Opposition to Aereo's Motion to Transfer ("Ermish Decl.") ¶¶ 2-4; Declaration of Kent Crawford in Opposition to Aereo's Motion to Transfer ("Crawford Decl.") ¶¶ 3-5.
[18] Mot. at 3, 14.
[19] *See* Dkt. No. 25 (Aereo's corporate disclosure statement identifying IAC as a substantial Aereo shareholder); Shepard Decl. Exs. 1-2.
[20] OUR BRANDS | IAC, http://iac.com/brands (last visited Nov. 7, 2013).
[21] Shepard Decl. Ex. 3.
[22] *Id.* Ex. 4.
[23] *Id.* Ex. 5.

C.   **Aereo's Attempt To Immunize Its Infringement With Aberrant Second Circuit Law.**

11.   Aereo is a subscription service that allows subscribers to watch television over the Internet.[24]  This lawsuit alleges that Aereo infringes the copyrights of local broadcast stations and owners of some of the copyrighted content they broadcast by capturing local broadcast signals and retransmitting them over the Internet to Aereo subscribers.[25]

12.   Plaintiffs allege that this is copyright infringement because retransmitting broadcast television programs violates the copyright owners' exclusive right to under the Copyright Act to perform their copyrighted works publicly.[26]

13.   Under a provision of the Copyright Act known as the "Transmit Clause," "[t]o perform . . . a work 'publicly'" is, among other things, to "transmit or otherwise communicate a performance or display of the work . . . to the public, by means of *any device or process*, whether the members of the public capable of receiving the performance or display receive it in the same place or in separate places and at the same time or at different times."[27]   "[D]evice" and "process" are defined broadly to include any device or process "now known or later developed."[28]

---

[24] Dkt. No. 8 ¶¶ 2-9.
[25] *See* Dkt. No. 5, at 1-2.
[26] *Id.* at 2-3; *see also FilmOn X*, 2013 WL 4763414, at *13-14; *BarryDriller*, 915 F. Supp. 2d at 1143-46.
[27] 17 U.S.C. § 101 (emphasis added).
[28] *Id.*

14.     Aereo alleges that it is not publicly performing Plaintiffs' copyrighted programs because the device or process it uses is not covered by the Transmit Clause.[29]  Aereo's defense is based on case law from the Second Circuit, in which that court held that the public performance right is limited to transmissions to the public made using *only certain* devices and processes.[30]  A service that follows the Second Circuit's technological "guideposts" is free, according to that court, to transmit copyrighted audiovisual works like television programs and movies to the public without obtaining authorization from, or compensating, the copyright owners.[31]

15.     Within the last year, two courts outside the Second Circuit have enjoined services identical to Aereo's and, in so doing, both courts expressly held that the Second Circuit read the statute incorrectly.[32]  Numerous scholars also agree that the Second Circuit misread the statute.[33]

16.     Aereo designed its retransmission device to fall within the loophole in the Transmit Clause it perceived the Second Circuit to have invented.[34]  It then deliberately limited its service to New York, guaranteeing that the initial lawsuit would be in Aereo's chosen forum.[35]  As Judge Chin of the Second Circuit pointed out in a scathing dissent from the opinion blessing Aereo's system, "it is telling that Aereo declines to offer its subscribers channels

---

[29] *See* Dkt. No. 28, at 20-26.
[30] *See id.*
[31] *See id.*
[32] *FilmOn X*, 2013 WL 4763414, at *13-14; *BarryDriller*, 915 F. Supp. 2d at 1143-46.
[33] *See supra*, n.1.
[34] *See WNET, Thirteen v. Aereo, Inc.*, 712 F.3d 676, 689 (2d Cir. 2013).
[35] *See id.* at 703 (Chin, J. dissenting).

broadcast from New Jersey, even though its antennas are capable of receiving those signals, for fear of being subject to suit outside the Second Circuit."[36]

17.     Aereo avoided a preliminary injunction in New York, because the district court was constrained by prior Second Circuit precedent (the *Cablevision* case).[37]  In denying the plaintiffs' motion, however, the district court made clear that it would have decided the case differently had it not been bound by *Cablevision*.[38]  The Second Circuit affirmed that decision, expressing its own misgivings about the result, but concluding that it was bound by *Cablevision* as well.[39]

18.     Once Aereo escaped an injunction in New York, it immediately began to expand its operations.  As part of that process, it put one of its retransmission devices in Utah.[40]  It is currently retransmitting the signal of local broadcast stations throughout the state, like KSTU, KUTV, and KMYU.  Aereo's infringement in Utah is limited to Utah — Aereo admits that no one outside of the state can receive its retransmissions of Utah stations' broadcasts.[41]  Now that Aereo has launched in Utah, it is the first time the local station plaintiffs had the need, or the opportunity, to challenge Aereo's infringement.

---

[36] *Id.*

[37] *Am. Broad. Cos., Inc. v. Aereo, Inc.*, 874 F. Supp. 2d 373 (S.D.N.Y. 2012); *see also Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121 (2d Cir. 2008).

[38] *Id.* at 375 ("But for *Cablevision*'s express holding regarding the meaning of the provision of the Copyright Act in issue here — the transmit clause — Plaintiffs would likely prevail on their request for a preliminary injunction."); *see also id.* at 385, 393.

[39] 712 F.3d at 686 ("[W]e do not work from a blank slate"); *id.* at 694 ("Perhaps the application of the Transmit Clause should focus less on the technical details of a particular system and more on its functionality, but this Court's decisions . . . held that technical architecture matters.").

[40] Declaration of Chaitanya Kanojia in Support of Aereo's Motion to Transfer ("Kanojia Decl.") ¶ 5.

[41] Dkt. No. 33 ¶ 9.

9

**D.      The Status Of The New York Action Against Aereo.**

19.      None of the plaintiffs in this case are parties in the New York case, and none of the copyrighted programs at issue here are at issue in the New York case.[42]

20.      In the year and a half since the New York case began, it has proceeded through motions for a preliminary injunction, a two-day evidentiary hearing, and an appeal to the Second Circuit.  Cross-motions for summary judgment are fully briefed and have been pending since July.  Fact discovery closed on October 30, and trial is expected early next year.

21.      There has been substantial discovery in the New York case aimed at precisely establishing the design and function of the transmission device at Aereo's New York facility, including site inspections and expert testing, since a key issue in that case is whether that device complies with the Second Circuit's guideposts.[43]

22.      Aereo's Utah facility has never been inspected in the New York case, and news reports indicate that Aereo's various devices around the country do not operate identically.[44]

**E.      Aereo's Declaratory-Judgment Action Against CBS And Its Owned-And-Operated Stations, None Of Whom Are Parties In This Case.**

23.      In May of this year, in another transparent attempt to keep its legal fight from proceeding in courts outside of the Second Circuit, Aereo filed a declaratory-judgment suit in the Southern District of New York against CBS and its owned-and-operated stations nationwide, seeking a declaration that Aereo is not violating their copyrights.[45]

---

[42] Shepard Decl. ¶ 2.
[43] *Id*. ¶ 4.
[44] *Id*. Ex. 6.
[45] *Id*. Ex. 7.

24.     A fully briefed motion to dismiss has been pending in that case since July.[46]

25.     None of the plaintiffs in this case are parties to Aereo's declaratory-judgment action.[47]  Although KUTV is a CBS affiliate, it is not owned and operated by CBS and is not a party to the declaratory-judgment action in New York.[48]

26.     Contrary to Aereo's assertions, its declaratory-judgment case does not seek a determination "with respect to all of the broadcasters' rights nationwide" — rather, it seeks an order declaring that Aereo's service does not infringe any of CBS's copyrights, and that it otherwise complies with the Copyright Act.[49]

27.     No CBS copyrights are at issue in this case; KUTV has sued to enforce its own rights in its local programming only.[50]  Aereo did not ask the New York court for any relief that would affect the rights of the parties in this case.[51]

**F.      Litigation Against Aereo And Its Clones Is Proceeding Around The Country.**

28.     Currently, several cases against Aereo and its clones are pending around the country.

29.     Beyond the cases in New York, Aereo has been sued in the District of Massachusetts by Hearst Stations, Inc., doing business as a local Boston broadcaster, WCVB. When Aereo asked that court to transfer its case to New York, it declined, holding that Hearst,

---

[46] *See Aereo, Inc. v. CBS Broad., Inc.*, No. 13-3013, Dkt. Nos. 29, 30, 32 (S.D.N.Y.).
[47] Shepard Decl. Ex. 7.
[48] *Id.*
[49] *Id.*
[50] *See* Dkt. No. 3.
[51] Shepard Decl. Ex. 7.

which controls television stations across the country, was a "hometown plaintiff for the purposes of th[at] litigation," and was entitled to its chosen forum.[52]

30.     There is likewise ongoing litigation in federal district and appellate courts in California and the District of Columbia with an Aereo clone called FilmOn X, which operates an identical service.[53]   In the first case, *BarryDriller*, a district court in the Central District of California enjoined FilmOnX from operating within the Ninth Circuit.[54]   When FilmOn X continued to expand, another lawsuit was filed against FilmOn X in the District of Columbia.[55] That court enjoined FilmOn X as well, joining the California court in rejecting the Second Circuit's interpretation of the statute, which it called "baldly wrong."[56]

## ARGUMENT

The Tenth Circuit has emphasized the heavy burden on the party moving for transfer,[57] directing this Court to "honor the plaintiff's choice of forum 'unless the balance in the defendant's favor is shown by *clear and convincing* evidence.'"[58]   Aereo has fallen far short of meeting its burden here.

---

[52] *Hearst*, 2013 WL 5604284, at *3.

[53] *See FilmOnX*, 2013 WL 4763414; *BarryDriller*, 915 F. Supp. 2d 1138.

[54] *BarryDriller*, 915 F. Supp. 2d at 1148-49.

[55] *FilmOnX*, 2013 WL 4763414 at *1.

[56] *Id.* at *14 n.12.

[57] *E.g.*, *Emp'rs Mut. Cas. Co.*, 618 F.3d at 1167-68 ("Unless the balance is strongly in favor of the movant, the plaintiff's choice of forum should rarely be disturbed.") (quoting *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992)); *see also RES-NV, LLC v. Rosenberg*, No. 13-115, 2013 WL 3548697, at *3 (D. Utah July 11, 2013) ("A plaintiff's choice of forum should rarely be disturbed, unless the balance of factors is strongly in favor of the movant.") (internal quotation marks omitted); *3form, Inc. v. Sunset Plaza, LLC*, No. 10-856, 2011 WL 4565797, at *2 (D. Utah Sept. 29, 2011) (same).

[58] *Emp'rs Mut. Cas. Co.*, 618 F.3d at 1167 n.13 (emphasis in original) (quoting *Headrick v. Atchison, T. & S.F. Ry. Co.*, 182 F.2d 305, 310 (10th Cir. 1950)).

**A.      The Relevant Factors Weigh Heavily In Favor Of Keeping This Case In Utah.**

      **1.      The Plaintiffs' Choice Of Forum Is Entitled To Substantial Deference.**

This Court has recognized that a plaintiff's choice of forum should be accorded "great weight."[59]   The plaintiffs filed this action in the District of Utah for a very good reason — it is the district where Aereo's infringement is taking place,[60] where Aereo's equipment that enables the infringement is located,[61] where the local broadcasters maintain their offices,[62] employ hundreds of people,[63] where the populace served by plaintiffs' programming resides,[64] and the only place where the people to whom Aereo offers its Utah service can receive it, meaning that the infringement at issue occurs exclusively in this district and nowhere else.[65]   Because this case was brought by Utah companies "based on Defendant['s] actions taken against and directed to Plaintiffs in [Utah]," causing harm to "their [Utah] based business[es]," and because the plaintiffs' allegations "show the facts giving rise to this action are materially related or have a significant connection to [Utah]," "this factor weighs against transferring this action."[66]

Aereo argues that the locations of some of the plaintiffs' parent corporations defeat their hometown status.   That is not the proper analysis.   The local broadcast station plaintiffs are long-established Utah businesses, with offices and employees located in Utah.   Utah is their home

---

[59] *See, e.g.*, *3form*, 2011 WL 4565797, at *2.
[60] Kanojia Decl. ¶ 5.
[61] *Id.*
[62] Dkt. No. 9 ¶ 4-5, 7; Dkt. No. 10 ¶ 3-4.
[63] *Id.*
[64] *Id.*
[65] Dkt. No. 33 ¶ 9.
[66] *Forte Supply, LLC v. Mojo Frozen Yogurt, LLC*, No. 13-797, 2013 WL 5477165, at *7 (D. Colo. Sept. 30, 2013).

state.  The employees who are key witnesses in this case reside in Utah.  The cases cited by Aereo do not say anything about the location of a parent company being relevant in a transfer analysis.[67]  Aereo has not provided any basis to deviate from the Tenth Circuit's rule that the plaintiff's choice should "rarely be disturbed."[68]

        **2.**        **Aereo, Not The Plaintiffs, Is Guilty Of Forum Shopping.**

Aereo's accusation that Plaintiffs have engaged in forum shopping rings hollow.  It is Aereo that gamed the system by limiting its initial launch to New York so as to ensure that the first round of litigation against it would occur there, enabling it to take advantage of the aberrant precedent established by the Second Circuit in *Cablevision*.[69]  This case is the first opportunity that KSTU, KUTV, and KMYU have ever had to challenge Aereo's infringement in court, and they have chosen their home forum.  This is not forum shopping.[70]

Aereo suggests that if this Court rules on the merits it will somehow "reverse" either the Second Circuit or the District of Massachusetts (which had not issued its decision when the plaintiffs filed this case).  First, Plaintiffs specifically excluded the Second Circuit from their request for a preliminary injunction.[71]  And second, this Court has the discretion — but certainly

---

[67] Mot. at 10-11 (citing *Schecher v. Purdue Pharma L.P.*, 317 F. Supp. 2d 1253, 1263 (D. Kan. 2004) (plaintiff was a non-resident class representative, so his choice was entitled to "diminished" weight); *Waldmer v. SET Solutions, Inc.*, No. 05-2098, 2006 WL 314346, at *3 (D. Kan. Feb. 3, 2006) (four of five individual plaintiffs did not live in their selected district).
[68] *Emp'rs Mut. Cas. Co.*, 618 F.3d at 1167.
[69] *See WNET*, 712 F.3d at 703 (Chin, J., dissenting).
[70] *See, e.g.*, *Schnabel v. Ramsey Quantitative Sys., Inc.*, 322 F. Supp. 2d 505, 513-14 (S.D.N.Y. 2004) (a plaintiff who files suit to resolve a "ripe legal dispute" in the "forum most convenient to him" is not forum shopping).
[71] Dkt. No. 5, at 29.

14

not the obligation[72] — to exclude Massachusetts from any injunction it issues, just as the District of Columbia and California courts limited their injunctions.[73]

### 3.    The Convenience Of The Witnesses Tips Decidedly In Favor Of This District.

The convenience of the witnesses is "the most important factor" in analyzing a motion to transfer.[74]   To meet its burden of establishing that the plaintiffs' forum is inconvenient, the movant must (1) identify the witnesses and their locations; (2) indicate the quality or materiality of their testimony; and (3) show that any such witnesses were unwilling to come to trial, that deposition testimony would be unsatisfactory, or that the use of compulsory process would be necessary.[75]   Aereo never so much as mentioned — let alone attempted to meet — this burden.

This district is more convenient for the witnesses in this case.  Station Managers Tim Ermish and Kent Crawford, who will testify about KSTU's, KUTV's, and KMYU's copyrighted local programming, their Internet offerings, their business relationships, their advertising sales, as well as the harms that Aereo will cause to their abilities to negotiate retransmission consent agreements, their advertising revenue, and their abilities to continue to provide high-quality local

---

[72] *See Fox Television Stations, Inc. v. FilmOn X LLC*, No. 13-758, Dkt. No. 54, at 1-3 (D.D.C. Oct. 15, 2013) (order denying FilmOn X's request to permit it to operate in Massachusetts in light of the *Hearst* decision).

[73] *FilmOn X*, 2013 WL 4763414, at *18; *BarryDriller*, 915 F. Supp. 2d at 1148.

[74] *Emp'rs Mut. Cas. Co.*, 618 F.3d at 1169.

[75] *Id.* (internal alterations omitted); *see also Scheidt*, 956 F.2d at 965-66 (holding that the "[d]efendant's meager showing failed to demonstrate the requisite inconvenience to his witnesses," where he identified eight out-of-state witnesses, but had not submitted anything to indicate the quality or materiality of those witnesses' testimony, or that they were unwilling to come to trial in Oklahoma City, or that their deposition testimony would be unsatisfactory, or that the use of compulsory process would be necessary).

programming to the residents of this state, both reside in this district.[76]   Likewise, all the other

employees of the local broadcasters, who may also be called upon to testify about the harms that

Aereo causes, live and work in Utah.[77]

By contrast, Aereo has not identified a single material witness who resides in New York.

Rather, Aereo misleadingly states that the four Aereo executives it identified live "in either New

York or Massachusetts."[78]   In reality, *none* of the four people Aereo identified resides in New

York.[79]   Aereo's CEO Chet Kanojia and CTO Joseph Lipowski live in Massachusetts.[80]   Aereo's

Principal Antenna Engineer, Jim Bingham, lives in Ohio, and its Director of Marketing lives in

California.[81]   To the extent Aereo claims it would be more convenient for its employees to travel

to New York, numerous courts have held that the convenience of witnesses who do not reside in

either the original forum or the proposed transferee forum is irrelevant to the transfer analysis.[82]

---

[76] Ermish Decl. ¶ 3; Crawford Decl. ¶ 4.

[77] Ermish Decl. ¶ 4 (listing seven more potential witnesses that live in Utah); Crawford Decl. ¶ 5.

[78] *See* Mot. at 13 ("Aereo's technology was developed in *Boston and New York*[;]" "Aereo maintains its records regarding its technology, structure, and operation, as well as financial information, in *New York and Boston*[;]" "documents and materials expected to be produced in this litigation are in *New York and Boston*[;]" Messrs. Kanojia and Lipowski live on "the east coast") (emphases added); Kanojia Decl. ¶ 6.

[79] *See* Kanojia Decl. ¶ 6.

[80] Shepard Decl. ¶¶ 14-15.

[81] *Id.* ¶¶ 16-17.   Plaintiffs assume that Aereo is referring to Ali Cox, its former Director of Marketing, since it has no current marketing director (which Mr. Kanojia presumably knows).

[82] *See Stewart v. Stoller*, No. 07-552, 2008 WL 4168519, at *5 (D. Utah Aug. 28, 2008) ("Defendants have failed to carry their burden in this case. Given the weight assigned to Plaintiff's choice of forum, *the fact that at least some of the Defendants would have to travel in any event*, and the other factors that a court considers, Defendants simply have failed to demonstrate that the action should be transferred to California.") (emphasis added); *Eres N.V. v. Citgo Asphalt Refining Co.*, 605 F. Supp. 2d 473, 480 (S.D.N.Y. 2009) ("The convenience of witnesses who reside in neither the current nor the transferee forum is not relevant when considering a motion to transfer venue.").

Moreover, transferring this case to New York to accommodate Aereo's executives at the expense of the local Utah plaintiffs would just "shift the inconvenience from one side to the other," which the Tenth Circuit has held is "obviously" not a valid ground for a transfer.[83]

The only potential witnesses that Aereo has identified in New York are two third parties, Nielsen, a company that measures television viewership and operates nationwide, and CIMM, a small think tank that studies ways that the television industry might improve measurement for cross-platform viewing.[84]   Aereo claims that Nielsen is an important witness based on its assertion that the plaintiffs in *New York* are relying on the fact that Nielsen does not currently measure Aereo's users.[85]   The arguments being made by a different set of plaintiffs in a different case are not a relevant consideration.  Plaintiffs here do allege that Aereo threatens to undermine their position in advertising sale negotiations that rely on Nielsen ratings, but that is just one of the multitude of irreparable harms described in Plaintiffs' motion.[86]   Moreover, to the extent that Nielsen's measurement of viewership is relevant, it is unlikely that it will be necessary to call Nielsen employees to testify, as Nielsen publicly announces what it intends to try to measure and can or cannot measure.[87]   It is unclear what Aereo expects CIMM to testify about.[88]   Finally, Aereo has failed to make the required showing that either Nielsen or CIMM would refuse to come to trial, or that their "deposition testimony would be unsatisfactory," or that "the use of

---

[83] *Scheidt*, 956 F.2d at 966.
[84] *See* Mot. at 12-13.
[85] *Id*. at 12.
[86]  Dkt. No. 5, at 23-26 (detailing harms to plaintiffs' retransmission consent negotiations, goodwill, and harm to plaintiffs' own internet offerings, among other things).
[87] Shepard Decl. Ex. 8 (Sep. 19, 2013 Nielsen article); *see* Gratz Decl. Ex. F.
[88] *See Emp'rs Mut. Cas. Co.*, 618 F.3d at 1169.

compulsory process would be necessary."[89]

### 4.     The "Technology" Aereo Claims Immunizes It From Liability Is In Utah.

Aereo's defense is that the antenna contraption it uses to retransmit Plaintiffs' content over the Internet is not the type of "device or process" covered by the Transmit Clause.[90]  The precise technical workings of Aereo's New York device have been the subject of multiple site inspections and expert examinations in the New York case.  This is because those parties must litigate whether Aereo's device is the type of "device or process" covered by the Transmit Clause — even though that statute, on its face, covers "*any* device or process."[91]  Plaintiffs' view is that under a correct reading of the Transmit Clause, the technological architecture of Aereo's system is irrelevant.  Nonetheless, under Aereo's theory of the case, the retransmission device it is using in Utah is a critical piece of evidence that will have to be inspected by the parties and their experts.

### 5.     A Judgment Issued By This Court Would Be Equally As Enforceable As One Issued By The Southern District Of New York.

A judgment issued by this Court would be enforceable in any district in the nation.[92]  It is baffling that Aereo has made an argument otherwise — surely Aereo is not suggesting that it would decline to comply with an order issued by this Court.

---

[89] *Id.*
[90] *See, e.g.*, Dkt. No. 28, at 26.
[91] 17 U.S.C. § 101 (emphasis added).
[92] *See, e.g.*, *Aurora Bank, FSB v. Paramount Residential Mortg. Grp., Inc*., No. 12-3235, 2013 WL 4079428, at *5 (D. Colo. Aug. 13, 2013) ("The judgment of a federal court is easily enforced throughout the country, *see* 28 U.S.C. § 1963, and, in any event, enforcement is a burden on Aurora Bank should it prevail, not on Paramount as the defendant."); *Forte Supply*, 2013 WL 5477165, at *8 ("As Defendants concede, a federal judgment would be equally

**6.    There Are No Obstacles To A Fair Trial In This District.**

It is unclear why Aereo thinks it cannot get a fair trial in this district, or why it believes that litigating in Utah would "put an ultimate decision on the merits at risk."[93]  As discussed above, Aereo is no thinly funded startup.  Aereo has not produced a shred of evidence that litigating this case in Utah would be cost-prohibitive, and there is no reason to credit Aereo's assertion to this effect, given its CEO's public statements to the contrary.[94]

**7.    The Relative Congestion Of Dockets Does Not Outweigh The Other Factors.**

This factor is relatively unimportant[95] and insufficient to counterbalance the other transfer factors.[96]  Given the array of factors supporting litigation in this district, the fact that the median time to resolution in Utah may be longer by a matter of months does not justify transfer. We are confident this Court can resolve this matter in a timely manner that is fair to all parties.

**8.    Plaintiffs Are Entitled To Have A Local Court Determine Aereo's Liability For Local Infringement.**

Aereo claims this factor is "neutral," but actually it weighs against transfer.  This case should be adjudicated by a local court because, although governed by federal law, the issue is fundamentally local:  Aereo is misappropriating Utah programming broadcast by Utah stations and selling it to Utah residents.  These local ties are not overridden simply because this case

---

enforceable regardless of the issuing court.  Defendants' argument that enforcement would be easier in New Jersey because Plaintiffs would have to docket a Colorado judgment or settlement in New Jersey before they could enforce does not tip the balance in Defendants' favor.").
[93] Mot. at 14.
[94] Shepard Decl. Ex. 4.
[95] *Andrews v. Norfolk S. Corp.*, No. 07-2688, 2008 WL 687255, at *4 (D.N.J. Mar. 4, 2008).
[96] *See, e.g.*, *High River Ltd. P'ship v. Mylan Labs., Inc.*, 353 F. Supp. 2d 487, 499 (M.D. Pa. 2005); *Studdard By & Through Studdard v. Connaught Labs., Inc.*, 793 F. Supp. 291, 293 (D. Kan. 1992).

involves some programming that other entities broadcast in other areas.  In any event, the inclusion of national programming in this case does not support transfer to New York, since *none* of the programming at issue in this case is at issue in New York.

>   **9.**     **Aereo Has Not Identified Any Other Practical Considerations That Weigh In Favor Of Transferring This Case.**

Finally, Aereo argues that it would be more efficient to transfer this case to New York because the *WNET* case is pending there.[97]   The opposite is more likely.  Any theoretical efficiency to be gained by transfer is outweighed by the fact that this case cannot be consolidated with the infringement action in New York because that case is substantially more advanced than this one.  In denying a very similar motion to transfer brought by Aereo in the Boston case, the Boston district court held that the New York case is "already quite advanced and therefore transfer is virtually guaranteed to either delay litigation or unfairly burden" plaintiffs.[98]   In so holding, the Boston court joined a long line of authority denying transfer where a related case in another district was "considerably more advanced,"[99] or at a "quite different" stage,[100] or where transfer and consolidation might cause "protracted delay."[101]   Moreover, to the extent Aereo is

---

[97] Mot. at 16-17.

[98] *Hearst*, 2013 WL 5604284, at *3; *see also Central States, Se. & Sw. Areas Pension Fund v. Davidson*, No. 06-6979, 2007 WL 722889, at *3 (N.D. Ill. Mar. 8, 2007) (denying transfer because "discovery was scheduled to close in the [related] action" shortly, "while this case is in the earliest stages of litigation").

[99] *Nat'l Commc'ns Grp., Inc. v. Great Lakes Commc'ns Corp.*, No. 07-4037, 2008 WL 2036905, at *4 (N.D. Iowa May 9, 2008).

[100] *Gagnon v. Sprint Spectrum, L.P.*, No. 02-2232, 2002 WL 31477975, at *2 (D. Kan. Oct. 31, 2002) (judicial economy would not be served where pending related litigation in another district had been proceeding for over a year, had already been appealed, and had pending petitions for certiorari, while the case before the court "is in the preliminary or early stages of discovery").

[101] *AT&T Corp. v. PAB, Inc.*, 935 F. Supp. 584, 592-93 (E.D. Pa. 1996).

claiming that litigation in New York is preferable because Judge Nathan has "preexisting familiarity with the issues in this case,"[102] plaintiffs respectfully submit that this Court is more than qualified to address the legal issues presented here.[103]

Aereo has suggested that, to avoid delaying the New York case or prejudicing plaintiffs, this case could be transferred to New York but *not* consolidated with the infringement case pending before Judge Nathan. But that just means the Utah action would start from scratch in New York, creating no efficiency whatsoever.[104] In fact, it would be less efficient than proceeding in Utah, since the Utah witnesses would have to travel to New York, and the key piece of evidence — Aereo's retransmission device — is located in Utah.

Aereo's backup suggestion, consolidating this case with the New York declaratory-judgment action it filed against CBS, would also create no real efficiencies. A fully briefed motion to dismiss has been pending in that action since July.[105] Moreover, none of the plaintiffs before this Court are parties to Aereo's declaratory-judgment case, there are no Utah stations in that case, there are no Fox affiliates or entities in that case, and the copyrights at issue here are not at issue in that case. Therefore, even if Aereo survives the motion to dismiss, consolidation

---

[102] Mot. at 16.

[103] *Truth Hardware Corp. v. Ashland Prods., Inc*., No. 02-1541, 2003 WL 118005, at *1-2 (D. Del. Jan. 13, 2003) (denying transfer despite the existence of related litigation pending in the transferee district because the related litigation was "several years old," "ha[d] already proceeded through the dispositive motion phase," and was set for trial, and rejecting the argument that the transferee court's familiarity with the technology at issue weighed in favor of transfer, because "[w]hile the court does not doubt that the Illinois court may be more familiar with the technology at this juncture, the present court is amply qualified to likewise familiarize itself").

[104] *Payless Shoesource, Inc. v. St. Paul Fire & Marine Ins. Co*., No. 06-4124, 2006 WL 3747558, at *1-3 (D. Kan. Dec. 18, 2006) (denying motion to transfer case to the district where underlying litigation was pending, given the unlikelihood of consolidating the two actions).

[105] *See Aereo, Inc. v. CBS Broad., Inc.*, No. 13-3013, Dkt. Nos. 29, 30, 32 (S.D.N.Y.).

would not prevent duplicative discovery.  To the contrary, discovery would be substantially complicated by the addition of multiple new parties, new copyrights, and the need for discovery into Aereo's Utah retransmission device.

Finally, courts have rejected transfers to districts with similar pending litigation where, among other reasons, the "commencement" of the other action "suggests forum shopping,"[106] where the other litigation is between one party to the present case and an unrelated party,[107] or where the other transfer factors simply outweighed the benefits of transferring the case.[108]  All of those criteria are present here.

## CONCLUSION

Aereo's motion to transfer should be denied.

---

[106] *LeMond Cycling, Inc. v. Trek Bicycle Corp*., No. 08-1010, 2008 WL 2247084, at *4 (D. Minn. May 29, 2008).
[107] *Blue Ribbon Commodity Traders, Inc. v. Quality Foods Distribs*., No. 07-4037, 2008 WL 269487, at *3 (E.D. Pa. Jan. 31, 2008).
[108] *Romanowski v. RNI, LLC*, No. 06-6575, 2007 WL 323019, at *8 (N.D. Cal. Jan. 31, 2007) (denying motion to transfer to a district where related litigation was pending, "because defendants have not met their burden of showing that the convenience of the parties and the witnesses, and the interests of justice, favor transfer"); *see also Shanehchian v. Macy's, Inc*., 251 F.R.D. 287, 292 (S.D. Ohio 2008).

Dated:  November 8, 2013                          Respectfully submitted,


                                                  */s/ Brent O. Hatch*
                                                  HATCH, JAMES & DODGE, PC
                                                  Brent O. Hatch
                                                  Shaunda L. McNeill

                                                  JENNER & BLOCK LLP
                                                  Richard L. Stone
                                                  Julie A. Shepard
                                                  Amy M. Gallegos

                                                  *Attorneys for Plaintiffs*
                                                  *Community Television of Utah, LLC, d/b/a*
                                                  *KSTU FOX 13, KUTV Licensee, LLC, d/b/a*
                                                  *KUTV and KMYU, and Fox Broadcasting*
                                                  *Company*